UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| Anthony Pape,<br><br>    Plaintiff,<br><br>v.<br><br>Hodges & Davis, P.C.,<br><br>    Defendant. | Case No.<br><br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE INDIANA DECEPTIVE CONSUMER SALES ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Anthony Pape ("Anthony"), is a natural person who resided in Crown Point, Indiana, at all times relevant to this action.

2. Defendant, Hodges & Davis, P.C. ("Hodges & Davis"), is an Indiana professional corporation that maintained its principal place of business in Merrillville, Indiana, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

4. Pursuant to 28 U.S.C. §1367(a), the Court also has Supplemental Jurisdiction over Plaintiff's claims under the Indiana Deceptive Consumer Sales Act, I.C. 24-5-0.5 et seq. ("IDCSA"), because they share a common nucleus of operative fact with Plaintiff's claims under the FDCPA.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

6. At all times relevant to this action, Hodges & Davis collected consumer debts.

7. Hodges & Davis regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

8. Hodges & Davis is a "debt collector" that regularly collects consumer debts as defined by 15 U.S.C. §1692a(6).

9. Hodges & Davis is a "supplier" as defined by § 24-5-0.5-2(a)(3) of the IDCSA.

10. As described, *infra*, Hodges & Davis contacted Anthony to collect a debt that was incurred primarily for personal, family, or household purposes.

11. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

12. Anthony is a "consumer" as defined by 15 U.S.C. § 1692a(3).

13. Within the last 12 months, Hodges & Davis began attempting to collect a debt from Anthony that Anthony incurred as a result of Anthony forgetting to provide his homeowner's association ("HOA") with updated banking information when his prior account was compromised.

14. The first communication Anthony received was from Hodges & Davis advising Anthony that they had sued him. Prior to Hodges & Davis initiating litigation against Anthony, Anthony was unaware that his HOA assessments were in default.

15. To resolve the dispute, Anthony rather quickly mailed a check ("First Check") to Hodges & Davis to satisfy the debt, in full.

16. To ensure delivery, Anthony mailed the First Check with upgraded tracking services.

17. Several days later, Anthony checked the tracking information and discovered that the First Check was seemingly lost in transit.

18. In response, Anthony informed Hodges & Davis that he would issue a replacement check, that he put a stop payment on the First Check, and not to attempt to negotiate the First Check.

19. In doing so, Anthony revoked his consent for Hodges & Davis to negotiate the First Check.

20. That same day, Anthony wrote a replacement check ("Second Check") to Hodges & Davis.

21. Anthony then mailed the Second Check to Hodges & Davis.

22. The First Check and Second Check were both received by Hodges & Davis at roughly the same time.

23. For reasons better explained by Hodges & Davis, despite being informed that Anthony had placed a stop payment order on the First Check, and despite the fact Hodges & Davis was in possession of the Second Check, Hodges & Davis still attempted to negotiate the First Check.

24. As a result of the stop payment order that Anthony placed on the First Check, Anthony's bank refused to honor it.

25. During this entire debacle, Hodges & Davis regularly was using electronic methods to communicate with Anthony.

26. None of the emails sent by two of Hodges & Davis' attorneys contained a conspicuous "opt out" notice as required by the FDCPA and Regulation F. *See* Exhibit A.

27. For reasons better explained by Hodges & Davis, despite being informed that Anthony had placed a stop payment order on the First Check, Hodges & Davis did not attempt to negotiate the Second Check.

28. Instead of depositing the Second Check, as explained in detail, *infra*, Hodges & Davis simply continued to bill additional attorney fees on Anthony's file.

3

29. More specifically, before Hodges and Davis finally deposited Anthony's payment, Hodges & Davis had supposedly billed an additional $4,250.00 on Anthony's file.

30. During this time period, bewildered at the amount of attorney fees Hodges & Davis were allegedly incurring, Anthony engaged in a forensic audit of Hodges & Davis accounting and, *inter alia*, proved to Hodges & Davis that Hodges & Davis was indeed attempting to collect more than Anthony owed.

31. In response, Hodges & Davis eventually admitted they were attempting to collect more than what was owed. *See* Exhibit B.

32. However, rather than crediting Anthony for their error, Hodges & Davis only credited Anthony with $30.

33. When questioned, Hodges & Davis explained that it was charging Anthony money as a penalty ("Bad Check Charge") for Anthony "bouncing" a check when, in fact, Anthony had demanded Hodges & Davis not cash the First Check because of Anthony's stop payment order.

34. This Bad Check Charge, if it was actually incurred by Hodges & Davis, was a self-inflicted harm and thus was never owed by Anthony.

35. Hodges & Davis' application of Bad Check Charge was an attempt to collect more than what Anthony owed.

36. For reasons better explained by Hodges & Davis, rather than deposit the Second Check, Hodges & Davis continued to bill Anthony unreasonable attorney fees and later demanded a bench trial on the same.

37. Unbeknownst to Anthony, this was not the first or last time Hodges and Davis added unauthorized and/or fabricated charges to Anthony's debt.

38. In fact, later Anthony discovered that Hodges & Davis had supposedly billed, and then attempted to collect, an additional $4,250 in attorney fees after Anthony had paid the debt in full.

39. Hodges & Davis billing $4,250 in attorney fees on this dispute is unreasonable and constitutes an attempt to collect an unreasonable and unjustified debt.

40. Hodges & Davis' unreasonable billing was not isolated to these questionable fees. In fact, in an effort to collect the unreasonable attorney fees through protracted litigation, Hodges & Davis seemingly viewed Anthony as a likely payday as it went as far to perjure itself in a lawsuit as a ploy to inflate their already inflated attorney fees. *See* Exhibit C.

41. More specifically, Hodges & Davis attested under oath that it had worked 13.2 hours at the rate of $325 per hour and therefore was owed, and demanded, $4,500 ("Inflated Fee").

42. However, ($325 x 13.2 Hours) = $4,290, much less than the Inflated Fee Hodges & Davis demanded.

43. Hodges & Davis also demanded payment of the Inflated Fee in electronic correspondence.

44. This email, among others, also failed to comply with Regulation F in that it included no opt-out instructions.

45. However, even $4,290 computed at $325 per hour is an unreasonable attorney fee considering the level of experience of the attorney at Hodges & Davis that supposedly worked on Anthony's file.

46. It is the policy and procedure of Hodges & Davis to attempt to collect unreasonable fees.

47. Hodges & Davis followed that policy and procedure, here, to the detriment of Anthony.

48. At a bench trial demanded by Hodges & Davis to solely collect their inflated attorney fees where Anthony defended himself, *pro se*, Hodges & Davis was admonished by the Judge.

49. Specifically, the Judge shook her head at Hodges & Davis and said the equivalent of, "you'll be lucky if you receive half of $4,290 from THIS Court" (emphasis added).

50. Additionally, the Judge directly expressed her frustration over the way Hodges & Davis undertook obtaining an unjustifiable fee in Anthony's case.

51. Additionally, at a bench trial demanded by Hodges & Davis to solely collect their inflated attorney fees, the Judge informed Hodges & Davis that this was the first time on the bench she'd witnessed attorneys attempt to collect fees the way Hodges & Davis were trying.

52. On information and belief, Hodges & Davis did not keep contemporaneous records of their attorney fees in Anthony's matter and, instead, recreated the time entries and amounts to appear as an invoice to use as an affidavit in Hodges & Davis' litigation to collect the Inflated Fee.

53. Hodges & Davis' collection efforts, including, but not limited to its communications and relentless and unreasonable pursuit of attorney fees using the legal system and their access thereto, caused Anthony emotional distress in the form of frustration, annoyance, aggravation and anxiety.

54. Hodges & Davis' collection efforts, including, but not limited to its communications and relentless and unreasonable pursuit of attorney fees using the legal system and their access thereto, caused Anthony out of pocket monetary harm including, but not limited to, the possibility that a lien will be placed, again, on Anthony's property by Hodges & Davis.

55. Hodges & Davis' collection efforts also intruded upon Anthony's privacy.

56. In addition, each time Hodges & Davis improperly utilized the court system, Hodges & Davis required Anthony to take time off of work to defend himself in court.

57. As a result of Hodges & Davis' relentless pursuit of its unreasonable and unconscionable attorney fees, Anthony's productivity at work suffered and Anthony suffered extensive monetary loss.

## COUNT ONE

**Violation of the Fair Debt Collection Practices Act**

58. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 57 above as if fully set forth herein.

59. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

60. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

61. The likely effect of Defendant's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Plaintiff.

62. Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

63. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 57 above as if fully set forth herein.

64. A debt collector's intent to violate the FDCPA may be inferred by its maintenance of policies and procedures which, in themselves, violate the FDCPA. *See Anchondo v. Anderson, Crenshaw & Associates, L.L.C.,* 256 F.R.D. 661, 671 (D.N.M. 2009); s*ee also Kromelbein v. Envision Payment Sol., Inc.*, 2013 WL 3947109, *7 (M.D. Penn. Aug. 1, 2013)("company policy can be just as much a violation of [FDCPA] as the rogue act of an individual employee. If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights."); *citing Edwards v. Niagara Credit Sol., Inc.*, 586 F. Supp. 2d 1346, 1354 (N.D. Ga. 2008) (awarding maximum damages in part because conduct was company policy, thereby making it routine and frequent).

65. Defendant's policies and procedures, as described, *supra*, constitutes "conduct the natural consequence of which is to harass, oppress, or abuse" consumers.

66. Defendant's practice, therefore, violates Section 1692d of the FDCPA, which provides:

    A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

    *See* 15 U.S.C. §1692d.

67. Because Defendant's practice, in itself, violates the FDCPA, it reflects an intent to harass consumers generally.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

68. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 57 above as if fully set forth herein.

69. Defendant violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## COUNT FOUR

### Violation of the Fair Debt Collection Practices Act

70. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 57 above as if fully set forth herein.

71. Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT FIVE

### Violation of the Fair Debt Collection Practices Act

72. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 57 above as if fully set forth herein.

73. Defendant violated 15 U.S.C. §1692g by failing to send Plaintiff the required notice within five days of Defendant's initial communication with Plaintiff.

## COUNT SIX

### Violation of the Indiana Deceptive Consumer Sales Act

74. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 57 above as if fully set forth herein.

75. The IDCSA states, in relevant part:

> "A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." I.C. § 24-5-0.5-3(a).
>
> "Without limiting the scope of subsection (a), the following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier are deceptive acts: The violation by a supplier of the federal Fair Debt Collection Practices Act (15 U.S.C. 1692 et seq.), including any rules or regulations issued under the federal Fair Debt Collection Practices Act (15 U.S.C. 1692 et seq.)." I.C. § 24-5-0.5-3(b)(20).
>
> "A person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater. The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of: (1) three (3) times the actual damages of the consumer suffering the loss; or (2) one thousand dollars ($1,000)." I.C. § 24-5-0.5-4(a)(1)(2).

76. Defendant's collection activity in connection with the Subject Debt is a "consumer transaction" as that term is defined by the IDCSA at I.C. § 24-5-0.5-2(a)(1)(C).

77. Defendant engaged in unfair, abusive, and deceptive conduct in its transactions with Plaintiff, in violation of I.C. §§ 24-5-0.5-3(20), violating the FDCPA.

78. Defendant intended that Plaintiff rely on its unlawful behavior in order to obtain attorney fees not earned and/or not authorized by statute or by agreement. As such, Defendant committed a "willful deceptive act" as that term is used and/or contemplated within the IDCSA.

79. Plaintiff has been harmed and has suffered damages as a result of Defendant's unlawful collection practices as described herein.

80. Plaintiff is therefore entitled to relief pursuant to I.C. § 24-5-0.5-4(a)(1)(2).

## JURY DEMAND

81. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

82. Plaintiff prays for the following relief:

    a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b. Judgment against Defendant for statutory damages as provided under I.C. § 24-5-0.5-4(a)(1)(2).

    c. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date: July 14, 2023

By: /s/ Jeffrey S. Hyslip
Jeffrey S. Hyslip, Esq.
Hyslip Legal, LLC
207 S. Harrison Street, Suite A
Algonquin, IL 60102
Phone: 614-362-3322
Email: jeffrey@hysliplegal.com

*Attorney for Plaintiff*